Fischer
vs
Hess' adm'r.

*Loughborough* for appellant; *J. & W. L. Harlan and Underwood* for appellee.

---

Case.

Case 136.

October 4.

Case stated.

# Fischer *vs* Hess' Administrator.

## Appeal from the Jefferson Circuit.

### *Husband and Wife. Limitation.*

Chief Justice Marshall delivered the opinion of the Court.

In March, 1831, George P. Hess, being about to leave Germany, in conjunction with his wife, executed a deed, in which it is recited that, being about to leave Germany for the United States with his family, *except* his eldest daughter, Charlotte, married to Philip Fischer, that he leaves behind him all his immovables, (or real estate,) and that he had borrowed on it, for travelling money, a capital of one thousand Florins. He makes, on this deed, the following provision, in substance, in be-

half of Charlotte Fischer: that out of his lands, which he had rented for six years, for 350 Florins per year, subject, however, to the taxes and other duties to be paid on the property, Charlotte was to have one sixth part, as a marriage gift; after the expiration of the six years, she is to have the fourth part of all the property left behind in Germany.

The remaining three fourths was to be rented out fifteen years longer, upon leases of three and six years. If the grantor and wife returned during that time, they were to become the full proprietors of one fourth of the property, which Charlotte was to give back, to be enjoyed by them during life. After the expiration of twenty years from the date of the deed, Charlotte was to have full possession of the whole property, free of rent, paying the taxes and duties. The three fourths to be estimated, according to the value at that time. Should either of the other children in America demand their part of the property in cash, Charlotte was to send it to them; if any one should return to live in Germany, such one was to be reinstated in his part of the property. But should none of them, before they reached the age of seventy, make any claim to the property left behind, then, and not sooner, Charlotte to become the entire owner. Fischer and his wife Charlotte, after the expiration of the six years leases, sold out the real estate embraced in the deeds, and removed to America; and this suit was brought by George P. Hess, the father of Charlotte Fischer, against Philip Fischer, for the moneys due to Hess, on account of the moneys received belonging to him in Germany, for rents and lands.

REPORTER.

When this case was formerly here, this Court decided that the deed executed by George P. Hess and wife in Germany, was not revocable at their option, but only by consent of all the parties interested, and that, if cancelled by them, their respective rights would depend upon the terms of the agreement for its cancelment. As all parties seem to have acquiesced in a sale of the land, which was disposed of by the deed, and in a conversion of the subject itself from land into mo-

ney, it may be inferred, and should, perhaps, be assumed, that this conversion was authorized by general consent. But in the absence of any evidence as to the terms of this consent, or as to any act by which the rights of the parties under the deed were destroyed or surrendered, except so far as this was necessarily a consequence of changing the land into money, it follows, as a matter of law, that, as the interest of one sixth of the six years rent was given by the deed to Charlotte Fischer absolutely, as was also the interest of one fourth of the entire property of Hess and wife remaining in Germany at the expiration of the six years, (or if this last interest was not given absolutely, it was subject only to a condition which cannot happen,) these rights still remained unaffected by the sale of the estate in Germany at the end of the six years, except that, by that sale, Charlotte's interest of one fourth in the land, was converted into an interest of one fourth in the proceeds of the sale. And although Fischer may have received the entire rents for the six years, and the entire proceeds of the sale afterwards, he was entitled to retain, as against Hess and wife, and all others the one sixth of the rents and the one fourth of the proceeds of sale given to his wife.

Then, as the lands disposed of by the deed were, in part, the property of Hess, and, in part, the property of his wife, and were made a joint fund for their joint benefit, except as to the portion given to Charlotte Fischer, they were jointly entitled to five sixths of the six years rent, and to three fourths of the proceeds of the sale, at least during twenty years from the date of the deed, which have not yet expired, and which were evidently looked to as covering the probable duration of their lives. And as the rights which might subsequently accrue to the three other children besides Charlotte, were wholly contingent, and exercisable only with reference to a state of things which could not exist after the sale, we are inclined to think that these rights were necessarily extinguished by the conversion of the land into money, and that, therefore, the absolute right and interest in three fourths of the proceeds vested in Hess

and wife. But, be this as it may, we are satisfied that, during the period of twenty years mentiond in the deed, and, at any rate, during the joint lives of Hess and wife, and the life of the survivor, up to the end of the twenty years, three fourths of the proceeds of the land belonged to them.

And as the action for the rents and proceeds of sale received by Fischer is not founded on the deed, but on his assumpsit, express or implied, to pay them to the person or persons for whom they were received, we are of opinion that, whether this assumpsit were made to Hess alone, or to him and his wife jointly, he might sue alone upon it, and that, having done so, the action was properly revived in the name of his administrator, after his death, and the right did not devolve on Mrs. Hess, though she survived him. But the statute of limitations having been pleaded, a recovery on the original liability, or on any promise made more than five years before the commencement of the suit, was barred by the lapse of that period. And the most serious question in the case is, whether there is any such promise or acknowledgment of debt within five years before the suit, as would authorize a recovery.

We are satisfied that the promise "to settle with Hess, and pay him what he owed him, and if he could not pay all in money, to pay in property," though made within the five years, is not sufficient. It is, in effect, said, in the case of *Head's Executor* vs *Manner's Administrator*, (7 *J. J. Marshall*, 261–2,) that every fact prior to the alleged new contract, is disposed of by the statute, and the defendant pleading it is not bound to prove or disprove any thing. In other words, the principle advanced in that case, and which we understand to have been generally maintained by this Court is, that where the original couse of action or liability is barred by the plea of the statute, the action can only be sustained by proof of such acknowledgment or promise on the part of the defendant, as dispenses with an investigation of the original transaction. The rule, as laid down in *Bell* vs *Rowland*, (*Hardin*, 301,) is, that to take the case out of the statute, there must be "an ex-

VOL. IX.                78

*Margin notes:*

FISCHER
vs
HESS' ADM'R.

If a promise be made to husband and wife, the husband alone may sue alone, and having done so, the suit should be revived and prosecuted by his adm'r.

Promise "to settle with and pay the plaintiff in money or property," is not sufficient to revive a debt barred by the statute of limitations: *Head's ex'ors.* vs *Manners' ad'r.* (7 *J. J. Marsh.* 261.) Where a cause of action is barred by lapse of time, it is not incumbent upon defendant to prove any thing, but the plaintiff, to maintain his suit, must prove such a promise as dispenses with any investigation of the original transaction. There must be "an express acknowledgment of the debt (con-

FISCHER
vs
HESS' ADM'R.

plea with the original consideration) or an express promise to pay it;" and the suit must be upon the new promise: (4 Mon. 37: 8 B. Mon. 8-9.)

press acknowledgment of the debt, (coupled with the original consideration,) or an express promise to pay it." And it has been often said by this Court, that when the original cause of action is barred by the statute, the action can only be sustained upon the new promise. The British authorities rather take the ground that the new promise or acknowledgment operates to support the action on the original promise. But this is against the letter of the statute, and against the doctrine asserted by this Court in the case first above cited, page 260, and in *Hord's Administrator* vs *Lee & Lashbrook*, (4 . *Monroe*, 37;) *Graham* vs *Hunt*, (8 *B. Monroe*, 8, 9.) The action in this case is general *indebitatus assumpsit*. The promise to settle, and pay the balance which may appear,, is not an acknowledgment of the debt, or of any debt, so as in itself to support the action, or to dispense with an investigation of the original transaction. It leaves open the whole enquiry as it would have stood before the promise, and really establishes nothing but the obligation to settle, and the action is not brought upon that obligation, and cannot be sustained by proving its existence, and a breach.

The only additional fact relied on to prove the case in opposition to the plea, is, that at some period subsequent to the promise above noticed, Fisher, in reference to the same subject, said to George Hess, the son of Geo. P. Hess, with whom he proposed to make the settlement, " you have received $719, 25, of your fathers estate, the balance in my hands is $750 or $758, and that, I mean to keep for my child ; you are in good business, I am earning nothing." If these expressions were sufficient to sustain the action, they would not authorise a recovery beyond the sum named with interest from the date of the acknowledgement, and it would be a serious question, whether it should be understood as an acknowledgment, that the sum named, remained in his hands after deducting the one sixth of the rents, and the one fourth of the sale money, or including those items. It might be inferred from the expressions as quoted above, and from the account then presented, consisting of items alleged to have been received by the son, out of

"You have received $750 of your father's estate, the balance in my hands is $750 or $758, and that I mean to keep for my child, you are in good business and I am earning nothing."—Held that these words are insufficient to sustain an action barred by limitation.

the fathers estate, that Fisher regarded the settlement as involving a division between the son and himself, and therefore charged himself with what he or his wife had received from the father, including the portion of the rents, and of the proceeds of sale given to them by the deed. But it is not necessary to decide whether any deduction might be made from the balance acknowleged to be in hand, because we are of opinion that the expressions taken together, do not disprove the plea, nor sustain the action. In the first place, the doubt already intimated, as to the true import of the acknowledgment weakens its force as an acknowledgment of a subsisting debt. But waiving this objection we are of opinion, that taking his expressions altogether, they do not authorise the inference of an intention to pay the sum acknowledged to be in his hands, but which he expressely said he intended to keep for his child. If the acknowledgment of the balance stood alone, as it would then be assumed that he was under obligation to pay it and intended to pay it as a subsisting debt, a promise to pay it might be implied. But the declaration that he intended to keep it for his son, repels the inference, or implication of a promise to pay, this would not be so with regard to the acknowledgment of a recent debt, the existence of which, would alone impose an obligation, on which the law would imply a promise, even against the intention of the debtor. But in case of a debt which has ceased to be obligatory as such, by lapse of time, and the operation of the Statute. it depends upon the will of the debtor whether or not he will create a legal obligation to pay it. It is going far enough to say that the will or intention to do so will be inferred from an acknowledgment that the debt is unpaid, unnaccompanied by any intimation of any intention to pay or not to pay it. But certainly if he indicates the intention not to pay it, he does not lose the benefit of the statute, the application of which does not depend upon the mere question, whether the debt has been paid or not. In the case first above cited, (5. *J. J. Mar*. 360-261) the Court say, "if when the acknowledgment is made, an intimation is given that the statute of limitations will be

pleaded, the law will not imply a promise," so, for the like reason, "if it even appear doubtful from the manner of making the acknowledgment, or from any circumstance accompanying it, whether the party intends to pay it, a promise to pay will not be implied;" and we think this conclusion follows legitimately and necessarily from the principle, that if the debt be barred by the statute, it rests purely in the will of the debtor whether he will create a new legal obligation to pay it. It is not sufficient that his acknowledgment admits or implies a moral obligation to pay, if he shows that he does not intend to pay, and it is immaterial whether his reason for not paying, be or be not either valid or true, nor is it material, except, in a moral point of view, whether he himself considers it either the one or the other.

It results from the foregoing views that there was no evidence in this case, to disprove the plea of non assumpsit within five years, or to repel the application of the statute, as a bar to the action on the original liability, and as the opinion of the Court in giving and refusing instructions on this and other points, involved were inconsistent with the principles of this opinion: Therefore, the judgment is reversed, and the cause remanded for a new trial, in conformity with this opinion.

*J. & W. L. Harlan—Pertle & Speed, Pilcher & Hauser* for appellant; *Greene* for appellee.